```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 15-CV-20973-GAYLES
                                    MAGISTRATE JUDGE P. A. WHITE

JOSEPH ARNOLD,                  :

        Plaintiff,              :        REPORT OF
vs.                                      MAGISTRATE JUDGE
                                :           (DE# 40)
CORPORAL J. SAINVIL, ET AL.,    :

     Defendants.                :
_____
```

I. Introduction and Background

The Plaintiff filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, and was granted *in forma pauperis* status. (DE# 1, 9). The Plaintiff is now represented by counsel, who filed an Amended Complaint, which is the operative pleading, on his behalf. (DE# 25). The case has been screened and is proceeding against Miami-Dade County for Florida battery; Jacky Sainvil, Ricardo Edwards, and Marlon McFadden for the use of excessive force under Section 1983; and Anguyasha Westby for failure to intervene under Section 1983. All of the Defendants have been served but only the County has filed a responsive pleading. (DE# 32, 34, 36, 37, 39, 41). The case has been stayed pursuant to joint motion by the Plaintiff and Miami-Dade County except with regards the County's Motion to Dismiss which is presently pending for resolution. (DE# 40); see (DE# 46).

(1)  Amended Complaint (DE# 25)

The Plaintiff alleges in his amended complaint (DE# 25) that he was in the Dade County Pre-Trial Detention Center on February 16, 2015, when Defendant Sainvil punched his face while he was offering no resistance and knocked him to the ground. Defendants Sainvil, McFadden, and Edwards kicked the Plaintiff all over the

body while he was on the ground, resulting in a broken arm, bruised ribs, and head injuries. The Plaintiff did nothing to provoke this use of force. Defendant Westby, who was in the hallway and observed the entire incident, was in a position to stop the use of excessive force and failed to do so. The Plaintiff seeks compensatory damages, punitive damages, reasonable litigation expenses, and any other relief the Court deems appropriate.

(2)   The County's Motion to Dismiss (DE# 40)

Defendant Miami-Dade County argues that the Amended Complaint should be dismissed with prejudice due lack of exhaustion and sovereign immunity. First, the Plaintiff failed to exhaust his administrative remedies because he did not file an appeal of the denial of his grievance as "unsubstantiated." Second, the County is immune from suit except in those circumstances it has consented to be sued. It has waived its sovereign immunity from tort liability only to the extent specified in statute, which excludes acts committed in bad faith, malicious purpose, or with wanton and willful disregards of human rights, safety or property, under Florida Statutes Section 768.28(9)(a). Because the Plaintiff has alleged that the officers acted wantonly and without legal cause or justification when they beat him, the County has not waived its immunity.

The County has filed with its response the Miami-Dade Corrections and Rehabilitation Department Inmate Complaint/ Grievance Process (DSOP 15-001 (2012)), the Miami-Dade County Corrections and Rehabilitation Department Inmate Handbook, the Declaration of Reynaldo Romero, and a copy of the Petitioner's grievance and grievance response.

(A)   DSOP 15-001 (DE# 40-2)

The Miami-Dade Corrections and Rehabilitation Department Inmate Complaint/Grievance Process is comprised of informal complaints,[1] formal grievances,[2] and grievance appeals.

Whenever possible, it is the MDCR's policy that "staff shall resolve a complaint(s) informally by discussing the concern with the affected inmate and provide a response and/or remedy." (DE# 40-3 at 3). For an informal resolution, an inmate may discuss issue with a correctional counselor within five workdays of the incident. (DE# 40-2 at 4). If the counselor is unable to effect a resolution within five workdays, the counselor "shall" provide the inmate with an inmate grievance form. Id.

An inmate may skip the informal complaint process and immediately proceed to the formal grievance process. In such a case, an inmate must request a form no later than ten workdays from the date of the incident and MDCR staff "shall" provide the inmate a MDCR Inmate Grievance form, and the inmate must return the completed form within two workdays after receiving it. Id. Staff then forwards the form to a supervisor or designee for review within one day. The form is then delivered for recording and review. A written response is then provided to the inmate within five days.

If the inmate agrees with the written response, "the grievance form shall be filed with the Grievance Clerk by the Correctional Counselor and the grievance process is complete." (DE# 40-2 at 5, ¶12). However, if the inmate does not accept the decision of the

---

[1] "Informal Complaint: Verbal and/or written communication with staff for informal resolution of an issue." DSOP 15-001 § II.

[2] "Grievance: A formal written complaint submitted by the affected inmate regarding an unresolved issue." DSOP 15-001 § II.

Facility/Bureau Supervisor or designee, "the inmate must indicate it on the MDCR Inmate Grievance form and sign it." (DE# 40-2 at 5, ¶13). If the inmate requests to appeal the decision, he or she must request an Inmate Grievance Appeal form and submit the completed form within two workdays. (DE# 40-2 at 6). A grievance resolution is provided within ten workdays from its receipt. Id.

    (B)  Inmate Handbook (DE# 40-3)

The Inmate Handbook encourages inmates to have their complaints informally resolved by MDCR staff. (DE# 40-3 at 31). If a complaint is not resolved by staff, the inmate may request an Inmate Action/Remedy Request form. The completed form must be submitted to a supervisor and the inmate may discuss the incident with the counselor within five workdays of the incident. Id. If the counselor is unable to resolve the issue within five workdays, he or she will provide an Inmate Grievance form upon the inmate's request, which must be requested no later than ten workdays from the date of the incident, and must be submitted to a counselor within two days from the date the inmate receives the form. (DE# 40-3 at 32). A grievance resolution will be provided within ten workdays from the date it is submitted. If the inmate does not accept the decision, the inmate must indicate it on the grievance form and sign it. Id. If the inmate would like to appeal the decision, he or she must request, complete, and submit an Inmate Grievance Appeal form within two workdays from the date the Inmate Grievance form was returned to him or her. Id. The MDCR Division Chief will then review the appeal and make a final decision. The Division Chief's decision is final and there is no further appeal. Id.

    (C)  Declaration of Reynaldo Romero (DE# 40-4)

Reynaldo Romero is an Inmate Services Administrator for the

4

Miami-Dade County Corrections and Rehabilitation Department. As part of his employment, he accessed and reviewed the Plaintiff's grievance records with regards to the alleged incident at the Pre-Trial Detention Center on February 16, 2015. A review of the grievance records reveals that the Plaintiff did not appeal the resolution of the grievance. (DE# 40-4 at 1).

(D) Plaintiff's Grievance (DE# 40-5)

The Plaintiff's grievance dated February 26, 2015, states:

> On Feb 16, 2015 at approx 4:15 AM I was escorted out the cell by Cpl Sanvil into the hallway where I was attacked by Cpl Sainvil, Off Edwards and Off McFadden. I was knocked unconscious by Cpl Sainvil waking up to the kicking of all 3 officers. I covered my face to prevent them from kicking me in the mouth and thats when my right arm was broken. Then I was picked up by Off Edwards and escorted to the bench where I was cuffed then beaten again further damaging my arm.

(DE# 40-5 at 1).

The remedy he requests is "[t]hat Cpl. Sainvil, Officer Edwards & McFadden be held accountable for my broken arm." Id.

The Response dated March 3, 2015, states: "Inmate Arnold alleges that an excessive use of force occurred during RTR on February 16, 2015. Inmate alleges that he was injured. Inmate Arnold is requesting that this matter be investigated." (DE# 40-5 at 2). The Response states that the matter is under administrative review, is "Forwarded to IA" and "This Grievance is Hereby Unsubstantiated." Id. The Plaintiff checked the box for "Accepted (Resolved)" and signed it on March 16, 2015. Id.

(3) Plaintiff's Response (DE# 42)

The Plaintiff argues that, by accepting the grievance response finding that his grievance was "unsubstantiated," the grievance process was complete no appeal was required. (DE# 42 at 4). He further argues that his Florida battery claim against Miami-Dade County is brought under Florida Statutes Section 768.28, not 42 U.S.C. § 1983 or any other federal law, and therefore is not subject to the exhaustion requirement. With regards to sovereign immunity, the Plaintiff argues that the Florida battery count does not include any allegations that the officers acted wantonly, maliciously, or in bad faith, and therefore, it is not excepted from the County's waiver of immunity.

(4)   The County's Reply (DE# 45)

The County argues that the Plaintiff's acceptance of the Supervisor's grievance resolution did not except him from filing an appeal and bars him from brining the instant suit. The Plaintiff's argument that he was not required to exhaust administrative remedies with regards to his Florida battery claim is incorrect because the exhaustion requirement applies to all claims brought under Section 1983 or "any other federal law," including the statute providing pendent jurisdiction, 28 U.S.C. § 1367, under which he brings his Florida tort claim. Further, sovereign immunity applies because the Florida battery claim incorporates the allegations that the Defendants punched and kicked the Plaintiff for no legitimate reason. These allegations can only equate with intentional and malicious misconduct that does not give rise to municipal liability under Florida's waiver of sovereign immunity statute.

II.   Motion to Dismiss Standard

In ruling on a motion to dismiss, the court accepts the factual allegations in the complaint as true and construes them in

the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); see Thomas v. Harris, 399 Fed. Appx. 508 (11th Cir. 2010) (noting dismissal under 28 U.S.C. § 1915(e)(2)(B) is governed by the same standard as Federal Rule of Civil Procedure 12(b)(6)). Once a claim has been stated adequately, it may be supported by any set of facts consistent with the allegations in the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A heightened pleading standard is not required; the plaintiff must plead "only enough facts to state a claim of relief that is plausible on its face." Twombly, 550 U.S. at 570. A complaint "does not need detailed factual allegations," however, the allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556. The rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto. Alvarez v. Attn'y Gen. for Fla., 679 F.3d 1257, 1259 (11th Cir. 2012) (citing Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000))(per curiam). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears

'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Haines v. Kerner, 404 U.S. 519 (l972). Despite this more liberal review, "'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal'" of a *pro se* plaintiff's complaint. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1246 (11th Cir. 2005) (citation omitted).

### III.  Discussion

(1) Exhaustion

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust administrative remedies before filing a civil rights action to challenge prison conditions. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 524-25. Exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." Woodford v. Ngo, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." Woodford, 548 U.S. at 89.

The Eleventh Circuit noted seven important policies favoring exhaustion of remedies:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (quoting Kobleur v. Group Hospitalization & Medical Services, Inc., 954 F.2d 705 (11th Cir. 1992)).

The exhaustion requirement is mandatory and there is no discretion to waive it. Porter, 534 U.S. at 524. The PLRA requires *proper* exhaustion, which means a prisoner must comply with the procedural rules and deadlines of the institution's grievance system. Woodford, 548 U.S. at 81. There are no futility or inadequacy exceptions to PLRA's mandatory exhaustion requirement. Alexander, 159 F.3d at 1325-26. A prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. Id. at 1325-26. For instance, an inmate who is seeking money damages as relief from defendants in a lawsuit must exhaust all administrative remedies before filing suit, even if money damages are not available as relief through the jail/prison grievance procedure. Id. Further, prisoners must have sought to file out-of-time grievances and/or grievance appeals in order to exhaust their administrative remedies under the PLRA. A

prisoner who has not sought leave to file an out-of-time grievance cannot be considered to have exhausted his administrative remedies. See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999). Even if an appeal would have been futile, the requirement that it be filed is not waived. See Alexander, 159 F.3d at 1325-26.

There is a two-step process for deciding motions to dismiss for failure to exhaust under the PLRA:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed....
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

When the second step is necessary, "[o]nce the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The defendant "bear[s] the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Id. at 1082.

The parties agree that the Plaintiff grieved the incident in an "Inmate Grievance" on February 26, 2015. (DE# 40-5 at 1). They also agree that the Response states that the Plaintiff alleges a use of excessive force occurred in which he was injured and that he is requesting that the matter be investigated, that "[t]his

grievance is under administrative review" and has been "[f]orwarded to AI." (DE# 40-5 at 2). The Response further states that the grievance is "[u]nsubstantiated," which the Miami-Dade grievance procedure defines as a "ruling rendered, as a result of a lack of proof and/or evidence concerning an inmate's formal written complaint/grievance." (DE# 40-2 at 3). The Plaintiff marked the grievance Response as "Accepted (Resolved)." Id.

The County essentially argues that the Plaintiff's acceptance of the Grievance Response and failure to file a Grievance Appeal abandoned the matter. The undersigned disagrees. The Miami-Dade grievance procedures provide that an appeal is only required "[i]f the inmate does not accept the decision of the Facility/Bureau Supervisor or designee...." (DE# 40-2 at 5). On the other hand, "[i]f the inmate agrees with the written response, the grievance form shall be filed with the Grievance Clerk by the Correctional Counselor and the grievance process is complete." Id.

Here, the Plaintiff's acceptance of the grievance response acknowledged that evidence was lacking at that time but that an investigation was being initiated.[3] His acceptance of the response brought his grievance procedure to an end and no appeal was required by Miami-Dade's grievance procedure. See (DE# 40-2 at 5, ¶12). The undersigned cannot conclude from the specific circumstances present in this case that the Plaintiff failed to exhaust Miami-Dade's administrative remedies. Therefore, dismissal is not warranted based on lack of exhaustion.

(2) <u>Sovereign Immunity</u>

The doctrine of sovereign immunity provides that the County,

---

[3] Indeed, a stay has been granted in this case pursuant to the parties' joint motion because the matter is still under investigation. (DE# 43, 46).

11

as a political subdivision of the State of Florida, is immune from suit except in those circumstances where the State has given its consent to be sued. See Cauley v. City of Jacksonville, 403 So. 2d 379, 381 (Fla. 1981) ("Thus the general rule was that the state governments, their agencies, and their subdivisions could not be sued in state courts without state consent."). Florida gave its consent to be sued in tort actions through the enactment of Florida Statutes Section 786.28. The State waived its sovereign immunity from liability for torts "only to the extent specified in this [statute]," Florida Statutes Section 768.28(1), and thus set out limitations to suits against the State and its political subdivisions such as Miami-Dade County.

With respect to waiver of sovereign immunity in tort actions, Florida Statute § 768.28(9)(a) states in relevant part:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).

Therefore, in any case involving the actions of a county employee, either the county or the employee can be held liable, but not both. See § 786.28(2), (9)(a); McGhee v. Volusia County, 679 So. 2d 729, 733 (Fla. 1996). The general rule is that the State may be held liable for the acts of its employees unless "such [an] act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human

12

rights, safety, or property." § 768.28(9)(a); see McGhee, 679 So. 2d at 733. Therefore, to abrogate state immunity, a plaintiff must plead that officers "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and wilful disregard of human rights, safety, or property." § 768.28(9), Fla. Stat.

The County is entitled to sovereign immunity on the Plaintiff's Florida battery claim. The Amended Complaint alleges that the County is liable for battery due to the use of excessive force by Defendants Sainvil, McFadden and Edwards. (DE# 25 at 4). In the excessive force counts, the Plaintiff alleges that the he was not resisting and that the officers' actions were "[w]ithout legal cause or justification," and were "unnecessary and wanton." (DE# 25 at 5, 6, 7). Suit against the County is barred by sovereign immunity under these circumstances. See Willis v. Dade County School Board, 411 So. 2d 245, 246 (Fla. 3d DCA 1982) (upholding dismissal based on sovereign immunity because the complaint expressly alleged "malicious" assault and battery); District School Board of Lake County v. Talmadge, 381 So. 2d 698 (Fla. 1980) (state immune from suit when state employee did not act within scope of employment or acted in bad faith or with malicious purpose); see, e.g., Moore v. Miami-Dade County, 502 F.Supp.2d 1224 (S.D. Fla. 2007) (granting the County's motion to dismiss state law claims for false imprisonment, malicious prosecution, and battery because the plaintiff expressly alleged the actions were "wickedly, willfully, wanton and maliciously done," "malicious[]" and "unnecessary," respectively, and the County was therefore entitled to sovereign immunity).

Therefore, the County's motion to dismiss Count (1) based on sovereign immunity should be granted.

### IV. Conclusion

Based on the foregoing, it is recommended that the motion to dismiss filed by Defendant Miami-Dade County (DE# 40) be GRANTED on the grounds of sovereign immunity. It is further recommended that the case remain stayed and that it be administratively closed with instructions that the remaining parties file periodic status reports, and move to reopen the case within thirty days after the investigations of the incident have concluded.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 10th day of February, 2016.

_____
UNITED STATES MAGISTRATE JUDGE


cc:  Alan Judah Greenstein
     9200 S.Dadeland Blvd.
     Suite 308
     Miami, FL 33156

     Daija Page Lifshitz
     Miami-Dade County Attorney's Office
     111 NW 1st Street, Suite 2810
     Miami, FL 33128